KING, JUSTICE, DISSENTING:
 

 ¶ 31. The chancellor and the majority rely on an incorrect interpretation of the "opt-out" provision and of PCUS church rules to determine that PCUSA has no resulting trust interest in FPC's property. PCUSA does have a resulting trust interest in the property and, accordingly, I respectfully dissent.
 

 ¶ 32. The majority asserts that "it is clear that PCUS disclaimed any interest in church trust property until just before the merger forming PCUSA." Maj. Op. at ¶ 28. This is incorrect. As early as 1925, the PCUS Book of Church Order required that title to the property of dissolved churches must be conveyed to the Presbytery. By 1950, several local churches had included in their charters provisions that completely disclaimed any property rights of PCUS in their church property. The General Assembly considered these charters and determined that they were "contrary to and in violation of the historic practice and polity of the Presbyterian Church in the United States and, if upheld by the civil courts, would make it possible for 'such churches' to withdraw from the Presbyterian Church in the United States with their property at their own discretion." It concluded that local churches do not have absolute ownership of their property without reference to the denomination. In 1953, the General Assembly adopted a declaratory statement that, while a particular congregation enjoyed
 the beneficial use of its property, church property must not be used in violation of the obligation of the congregation to the PCUS. In 1965, a PCUS publication emphasized that "[t]he Church has refused to affirm that the property of a congregation belongs to that congregation absolutely and without any relation to the Church as a whole." In 1971, the General Assembly adopted a declaratory statement reaffirming its commitment to the 1953 statement, acknowledging that the civil laws of the State in which the property is situated may be applicable, but stating its belief that "[g]enerally, however, the civil courts concluded that a congregation belonging to a religious denomination and subject to the constitution, faith, and doctrines thereof, cannot use its property for a purpose which violates the relationship of the congregation to the denomination."
 
 [2]
 

 ¶ 33. When the PCUS was working to amend the Book of Church Order in the early 1980s to add the explicit term "trust" to its property chapter, the PCUS Stated Clerk sent a letter to all pastors and clerks of session. He reaffirmed that the trust provision merely explicitly set forth the
 
 traditional
 
 position of the PCUS, and purported to "sharpen the point made in the 1971 statement." He noted that the property amendments "are not related to the work of the Joint Committee on Presbyterian Reunion-they would have been written in the same language, and introduced at this time, if there were no reunion plans under consideration." He also reassured the recipients that the Plan for Reunion had a grandfather clause "under which PCUS churches would remain subject to
 
 tranditional PCUS provisions
 
 dealing with ownership, sale, and mortgaging of property in perpetuity." (Emphasis added.) He noted that the amendments were "essential" due to the United States Supreme Court's decision in
 
 Jones v. Wolf
 
 , noting that "the action of the civil courts leaves us no choice except to amend our provisions for holding property[.]"
 

 ¶ 34.
 
 Jones v. Wolf
 
 involved a dispute between majority and minority factions of a local PCUS church.
 
 Jones v. Wolf
 
 ,
 
 443 U.S. 595
 
 ,
 
 99 S.Ct. 3020
 
 ,
 
 61 L.Ed.2d 775
 
 (1979). The Court noted that "the provisions of the constitution of the general church, the Book of Church Order, concerning the ownership and control of property failed to reveal any language of trust in favor of the general church."
 
 Id.
 
 at 601,
 
 99 S.Ct. 3020
 
 . "What has happened over the years since
 
 Jones v. Wolf
 
 is that many hierarchical denominations have added more explicit property provisions to their general and local church governing documents, as the Supreme Court said would be appropriate."
 
 Presbytery of Greater Atlanta, Inc. v. Timberridge Presbyterian Church, Inc.
 
 ,
 
 290 Ga. 272
 
 ,
 
 719 S.E.2d 446
 
 , 458 (2011),
 
 certiorari denied by
 

 Timberridge Presbyterian Church, Inc. v. Presbytery of Greater Atlanta, Inc.
 
 ,
 
 567 U.S. 916
 
 ,
 
 132 S.Ct. 2772
 
 ,
 
 183 L.Ed.2d 638
 
 (2012). Thus, instead of silence on the issue in these documents, "we find provisions showing either that the general church does not control local church property, ... or, as in this case and others, provisions showing that local church property is held in trust for the general church."
 

 Id.
 

 The PCUS's 1982 amendment was clearly a reaction to what the PCUS saw as a misinterpretation
 of its church law by the courts; it thus added the explicit trust provision in order to protect its interests in the civil courts. FPC participated in the process to pass the amendments
 
 [3]
 
 and was governed by them when approved in 1982, choosing not to leave the denomination.
 

 ¶ 35. The 1982 PCUS trust provision, which governs FPC's property, provides that
 

 All property held by or for a particular church, whether legal title is lodged in a corporation, a trustee or trustees, or an unincorporated association, and whether the property is used in programs of the particular church or retained for the production of income, is held in trust nevertheless for the use and benefit of the Presbyterian Church in the United States.
 

 The 1982 PCUS Book of Church Order also provides that
 

 If a particular church is dissolved by the Presbytery, attempts by either majority or unanimous vote to withdraw from the Presbyterian Church in the United States or otherwise ceases to exist or function as a member of the Presbyterian Church in the United States, any property that it may have shall be within the control of the Presbytery and may be held for designated purposes or sold or disposed of in such manner as the Presbytery, in its discretion, may direct.
 

 The 1982 PCUS Book of Church Order states that
 

 The relationship to the Presbyterian Church in the United States of a particular church can be severed only by constitutional action on the part of the Presbytery .... If there is a schism within the membership of a particular church and the Presbytery is unable to effect a reconciliation or a division into separate churches within the Presbyterian Church of the United States ..., the Presbytery shall determine if one of the factions is entitled to the property because it is identified by the Presbytery as the true church within the Presbyterian Church in the United States....
 

 The 1982 PCUS Book of Church Order clarifies that
 

 Nothing in this chapter shall be construed to require a particular church to seek or obtain the consent or approval of any church court above the level of the particular church in order to buy, sell or mortgage the property of that particular church in the conduct of its affairs as a church of the PCUS.
 

 ¶ 36. The PCUSA Book of Order contains a similar trust provision to that contained in the 1982 PCUS Book of Church Order:
 

 All property held by or for a congregation, a presbytery, a synod, the General Assembly, or the Presbyterian Church (U.S.A.), whether legal title is lodged in a corporation, a trustee or trustees, or an unincorporated association, and whether the property is used in programs of a congregation or of a higher council or retained for the production of income, is held in trust nevertheless for the use and benefit of the Presbyterian Church (U.S.A.).
 

 But, in contrast to the 1982 PCUS Book of Church Order, the PCUSA Book of Order further provides that
 

 A congregation shall not sell, mortgage, or otherwise encumber any of its real property and it shall not acquire real property subject to an encumbrance or
 condition without the written permission of the presbytery transmitted through the session of the congregation.
 

 It also states that
 

 A congregation shall not lease its real property used for purposes of worship, or lease for more than five years any of its other real property, without the written permission of the presbytery transmitted through the session of the congregation.
 

 ¶ 37. The difference between the PCUS rules on property and the PCUSA rules on property is that congregations under the PCUS rules may exercise property rights without the approval of the denomination, while PCUSA rules forbid the congregation from buying, selling, leasing, or encumbering their property without denominational permission. Buying, selling, leasing, or encumbering the property is not at issue here. The longstanding tradition of
 
 both
 
 PCUS and PCUSA is that congregational property is held in trust for the denomination in the event of a congregational schism, dissolution, or situation in which the property is used in violation of the congregation's obligations to the denomination. PCUS was merely more hands-off about the beneficial use of property than is PCUSA, and that is what the opt-out provision accomplished: a church opting out of the property chapter did not have to obtain permission to buy, sell, or encumber property. While FPC opted out of the property provisions of the PCUSA Book of Order, "it plainly could not opt out of the property
 
 trust
 
 provision in Section G-8-0201, which mirrored the one in Section 6.3 of the PCUS Book of Church Order."
 
 Presbytery of Greater Atlanta
 
 ,
 
 719 S.E.2d at 455-56
 
 . Indeed, the opt-out provision specifically provided that in opting out of the PCUSA property provision, a church "shall hold title to its property and exercise its privileges of incorporation and property ownership under the provisions of the Constitution to which it was subject immediately prior to the establishment of the" PCUSA. That Constitution, according to FPC's own resolution to become a member of the PCUSA, was "the provisions of the Book of Church Order, Presbyterian Church in the United States (1982-1983 edition)[.]" The 1982-1983 PCUS Book of Church Order explicitly contained a trust provision in favor of the denomination. Moreover, FPC's "act of affiliating with the PCUSA ... with the trust provision
 
 already
 
 in its governing constitution demonstrated that [FPC] assented to that relinquishment of its property rights-rights it then chose not to reassert by leaving the new national church during the next eight years" as it could have opted to do.
 
 [4]
 

 Id.
 
 at 456. The incorporation of FPC in 2003 further bolsters its assent to and membership in the PCUSA, with the application for incorporation noting that incorporation was being sought in compliance with the Constitution of the Presbyterian Church (U.S.A.).
 

 ¶ 38. Accordingly, PCUSA has a resulting trust interest in the property at issue. I would reverse the chancellor's order granting summary judgment in favor of FPC and remand the case for further proceedings.
 

 KITCHENS, P.J., JOINS THIS OPINION.
 

 Before the United States Supreme Court's 1979
 
 Jones v. Wolf
 
 opinion, "courts normally resolved property disputes in hierarchical denominations simply by deferring to the decision of the general church's ecclesiastical authorities."
 
 Presbytery of Greater Atlanta, Inc. v. Timberridge Presbyterian Church, Inc.
 
 ,
 
 290 Ga. 272
 
 ,
 
 719 S.E.2d 446
 
 , 457-58 (2011),
 
 certiorari denied by
 

 Timberridge Presbyterian Church, Inc. v. Presbytery of Greater Atlanta, Inc.
 
 ,
 
 567 U.S. 916
 
 ,
 
 132 S.Ct. 2772
 
 ,
 
 183 L.Ed.2d 638
 
 (2012).
 

 FPC representatives did vote against the amendments, but after they were adopted, the church remained in the denomination, indicating its assent to be governed by the amendments despite initial disagreement.
 

 The Reunion Articles of Agreement provided that any PCUS congregation had the right to seek dismissal from the new denomination while retaining title to its property. This right expired eight years after reunion. FPC did not avail itself of this provision, and remained a PCUSA member.